**STATE of Missouri, Respondent,**

v.

**Edmond COX, Appellant.**

**No. 43347.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 2, 1981.

Motions for Rehearing and/or Transfer to Supreme Court Denied July 10, 1981.

Application to Transfer Denied
Sept. 8, 1981.

Leonard J. Frankel, Wolff & Frankel, R. Kristin Weaver, Clayton, for appellant.

George Peach, St. Louis, for respondent.

REINHARD, Judge.

Defendant was convicted by the Circuit Court of the City of St. Louis, sitting without a jury, of the offense of promoting pornography in the second degree, § 573.-030, RSMo 1978, and assessed a fine in the amount of $100. Defendant appeals. We affirm.

On November 29, 1979, Elishia Moore, a plainclothes police detective of the Vice Division of the Metropolitan Police Department of St. Louis, as part of an ongoing investigation into the operation of adult-type bookstores in the City of St. Louis, entered a business establishment, known as the California Book Store, located at 3724 N. Union Street, St. Louis, Missouri, posing as a customer. The officer selected two magazines off the rack, one entitled "Kim" and the other entitled "Seductive Lady." The officer took the two magazines to the defendant who was standing behind the counter and who was identified by the officer as the store clerk. The magazines were wrapped in clear cellophane, and the officer asked defendant if the material on the inside of the magazines was generally the same as the material on the cover. The defendant said that it was. The officer then indicated to defendant that he desired to purchase the items. They were rung up on the register and the officer gave the defendant the designated amount of purchase money. The officer then revealed his true identity and asked that his money be returned. The defendant returned the money. The officer testified that the money used was the property of the Metropolitan Police Department and that he was accountable for it. The officer stated that at the time he handed the money to the defendant, it was his intention to place defendant under arrest and take back the money. In addition to the testimony of the officer, the state's evidence consisted of the two magazines. Defendant contends that the court erred in declaring the magazines to be obscene under the rules stated in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

Although the issue presented here has been the subject of substantial debate among judges, legal scholars and academicians over the years (see majority, concurring and dissenting opinions in *Miller v. California, supra*, and *McNary v. Carlton*, 527 S.W.2d 343 (Mo. banc 1975), the fact remains that a majority of the United States Supreme Court in *Miller* recognized "that the States have a legitimate interest in prohibiting dissemination or exhibition of obscene material," *Id.*, 413 U.S. at 18, 93 S.Ct. at 2612, and adopted guidelines in response to this recognition. In *McNary*, a majority of the Missouri Supreme Court adopted the guidelines established in *Miller* to enable Missouri to regulate the dissemination of obscene material if these guidelines are met.

In *Miller*, the court confined the permissible scope of a state's regulation to works which depict or describe sexual conduct. The conduct must be specifically defined by the applicable state law, and the state offense must be limited to works which meet the court's guidelines. *Id.* 413 U.S. at 24, 93 S.Ct. at 2614.

The court then set out the basic guidelines for the trier of fact:

(a) whether the 'average person applying contemporary community standards' would find the work, taken as a whole, appeals to the prurient interest, (citations omitted); (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the

work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24, 93 S.Ct. at 2615.

The court gave a few examples of what a state statute could define for regulation under part (b), *supra:*

> (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
> (b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

*Id.* at 25, 93 S.Ct. at 2615.

The guidelines established by *Miller* have been essentially incorporated by the Missouri General Assembly into Subsections (1) and (10) of § 573.010, RSMo 1978, which state:

> (1) 'Pornographic', any material or performance is 'pornographic' if, considered as a whole, applying contemporary community standards:
> (a) Its predominant appeal is to prurient interest in sex; and
> (b) It depicts or describes sexual conduct in a patently offensive way; and
> (c) It lacks serious literary, artistic, political or scientific value.
> In determining whether any material or performance is pornographic, it shall be judged with reference to its impact upon ordinary adults;

> .    .    .    .    .

> (10) 'Sexual conduct' means acts of human masturbation; deviate sexual intercourse; sexual intercourse; or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast of a female in an act of apparent sexual stimulation or gratification;
> . . . .

These subsections define the terms contained in the statute under which defendant was convicted.

█ In the case before us, the defendant consented to a trial of his case by the court sitting without a jury. Therefore, the court sat as a trier of fact. The court found the material to be pornographic under Missouri law. The photographs in each of these magazines are close-ups of sexual intercourse in various positions, fellatio, cunnilingus, ejaculation, etc. We find no merit in defendant's contention that the court erred in determining that the magazines were pornographic.

█ Defendant next contends that the state failed to introduce any evidence to establish that the promotion of pornographic materials was done for pecuniary gain as required by § 573.030, RSMo 1978. Defendant argues that the statute requires evidence of personal financial gain or profit. Section 573.030, RSMo 1978, in its applicable part, reads:

> 1. A person commits the crime of promoting pornography in the second degree if, knowing its content and character, he:
> (1) Promotes or possesses with the purpose to promote any pornographic material for pecuniary gain; . . . .

There is no Missouri case law interpreting the phrase "pecuniary gain." However, in its Comment to § 573.030, RSMo 1978, the legislature has indicated that the emphasis in this area should be on the commercial distribution of pornography, including private clubs and areas involving indirect consideration such as sales of food and liquor. Comment to 1973 Proposed Code.

This legislative intent is further confirmed by the Comment to § 573.040, RSMo 1978, which prohibits the furnishing of pornographic materials to minors, and omits the requirement of "pecuniary gain." The Comment states that to protect children from exposure to materials or performances, "[t]he purpose is broader than merely combating commercial exploitation of obscenity." Comment to 1973 Proposed Code.

It is clear that the legislature intended that § 573.030, RSMo 1978, apply to persons promoting the sale of pornography regardless of their personal gain or profit in each sale. It is equally clear that the case before us comes within the scope of this statute. The arresting officer testified that he gave money to the defendant for the purchase of

two magazines and that the defendant put the money in the cash register, returning the change.

Defendant's third point is also without merit. He contends that the court erred in failing to sustain his motion to suppress as evidence the two magazines because the procedure followed by the officer did not constitute a valid purchase. Therefore, it was a seizure of presumptively protected First Amendment materials without a warrant in contravention of the First, Fourth and Fourteenth Amendments of the United States Constitution.

Defendant admits that the facts relating to the purchase in this case are almost identical to those in *State v. Perry*, 567 S.W.2d 380 (Mo.App.1978). Judge McMillian, speaking for our court, held that a valid sale had taken place. Defendant asks that we reexamine our holding in *Perry*. We have done so and find that Judge McMillian's logic is still sound.

We have also examined defendant's final point in which he contends that the court should have issued a summons rather than a warrant for his arrest. He relies on Rule 21.03 which states:

> Upon the filing of an information or the return of an indictment charging the commission of a misdemeanor a summons shall be issued unless there is reasonable grounds for the court to believe that the defendant will not appear upon the summons in which event a warrant for the arrest of the defendant shall be issued.

We find nothing in the record which would entitle the defendant to any relief upon this point.

The judgment of the trial court is hereby affirmed.

CRIST, P. J., and SNYDER, J., concur.